WIGGINTON, Judge.
The appeal and cross appeal are from a final summary judgment entered against the plaintiff in a malpractice action, and an order denying the defendants’ motion for attorneys’ fees and costs. We reverse the final summary judgment and therefore find it unnecessary to reach the fee issue on cross appeal.
■In the summary judgment the trial court held that plaintiff’s action was barred by the limitations period in section 95.11(4)(b), Florida Statutes (1981), as his deposition testimony conclusively proved that he had “discovered or should have discovered” his cause of action more than two years prior to his having filed suit. Plaintiff filed his complaint on April 21,1982, in which it was alleged that, on May 22, 1978, defendant Dr. Flynn failed to properly perform surgery to implant a patellofemoral prosthesis in plaintiff’s knee, in that he placed the prosthesis in upside down. The complaint further alleged that in a second operation performed on April 26, 1979, Dr. Flynn improperly removed one portion of the pa-tellofemoral prosthesis, leaving plaintiff’s knee with metal moving over bone. As a result of the allegedly faulty surgical procedures, plaintiff was required to undergo surgery in October, 1981, for a total knee replacement, performed by Dr. Campbell.
The final summary judgment recites that plaintiff knew “that there was some deficiency in the medical services rendered by Dr. Flynn since immediately subsequent to the first surgery in May, 1978.” Plaintiff argues that he did not become aware of the position of the prosthesis until he awoke from the October, 1981 surgery to learn that a total knee replacement had been performed by Dr. Campbell because of the damage caused by the misplaced prosthesis. We hold that whatever knowledge plaintiff possessed following the 1978 surgery was not dispositive of his knowledge concerning the prosthesis, and that an issue of material fact as to his knowledge of the prosthesis remains.
Plaintiff’s deposition reveals-that he originally injured his knee in 1963, for which he underwent surgery. As a result of the injury, he developed degenerative arthritis that caused gradual deterioration of the knee in the following years. In 1978, plaintiff underwent further surgery on his knee, performed by Dr. Flynn. Fol *374 lowing the surgery, plaintiff experienced difficulty with his knee “popping out,” and was subsequently informed by another physician, whom plaintiff was seeing on an unrelated matter, that a tendon had been misaligned and that he should return to the physician who performed the operation to have it corrected. When plaintiff returned to Dr. Flynn for examination, Dr. Flynn scheduled the April, 1979 surgery to correct the placement of the tendon, which in turn corrected the “popping” problem. However, following surgery, the knee became stiff and painful and grew progressively worse. Plaintiff stated that Dr. Flatt, the rheumatologist to whom Dr. Flynn had referred him to treat the degenerative arthritis, had remarked that the prosthesis appeared “too large” from an “aesthetic” point of view, but that “there was nothing to worry about,” the prosthesis was “adequate” and was probably not contributing to his stiffness and pain. No recommendation was made that it be removed.
Plaintiff admitted having become irritated in late 1979 over Dr. Flynn’s bill, feeling that he should not pay for what he felt was Dr. Flynn’s error in surgical technique. However, he continued to be treated by Dr. Flynn because of the increasing severity of the pain and swelling in his knee. Dr. Flynn opined that plaintiff required a total knee replacement, but preferred to wait until a new type of prosthesis would be available. Plaintiff was asked to bide his time and wear a brace.
In the meantime, Dr. Flynn performed an operation on plaintiff’s elbow, which proved to be unsuccessful. Plaintiff was thereafter, in late 1980 or early 1981, referred to Dr. Campbell by Dr. Flatt. Dr. Campbell repaired the damaged elbow and advised further knee surgery, as the degenerative arthritis had destroyed the surfaces of the joints. No mention was made of the prosthesis, nor did Dr. Campbell indicate that Dr. Flynn had done anything incorrectly, although he was of the opinion that the total knee replacement proposed by Dr. Flynn was unnecessary and that he intended to do some repair work instead. However, when Dr. Campbell performed the surgery in October, 1981, he discovered that the prosthesis had been installed upside down; that the improper installation of the prosthesis had caused considerable damage to the joint; and, consequently, that a total knee replacement was required after all.
Contrary to the holding of the trial court, the above-recounted facts do not establish the absence of a genuine issue of material fact as to what plaintiff discovered or should have discovered concerning the prosthesis. At most the deposition establishes that plaintiff was aware in late 1978 or early 1979 of an improperly placed tendon. That condition, however, was rectified by Dr. Flynn by the April, 1979 surgery. The limitation established by section 95.11(4)(b) is predicated on the “incident giving rise,” to the cause of action. The alleged incident giving rise to the present cause of action was not the separate incident of the misplaced tendon, but was Dr. Flynn’s installing the prosthesis upside down. The deposition testimony is far from conclusive that plaintiff discovered or should have discovered that fact in 1978. Compare Florida Patient’s Compensation Fund v. Tillman, 453 So.2d 1376 (Fla. 4th DCA 1984). Consequently, the trial court erred in entering final summary judgment.
Plaintiff also argues that the trial court committed reversible error in entering summary judgment without first affording him an opportunity to depose Dr. Flynn. As the record reflects that plaintiff’s trial counsel made a substantial effort to depose Dr. Flynn, though thwarted in that endeavor through no fault of his own, he was entitled to complete his discovery before summary disposition of his case. Danna v. Bay Steel Corporation, 445 So.2d 704 (Fla. 4th DCA 1984); Moore v. Freeman, 396 So.2d 276 (Fla. 3d DCA 1981). Consequently, on remand, plaintiff shall be entitled to depose Dr. Flynn.
Finally, plaintiff contends that the trial court erred in entering final summary judg *375 ment based on the statute of limitations in favor of the Florida Patient’s Compensation Fund, since the fund did not plead the statute as an affirmative defense. However, due to our reversal of the final summary judgment, we need not reach the merits of this argument. Similarly, we need not reach the issue raised on cross appeal regarding the denial of the defendants’ motion for attorneys’ fees.
REVERSED and REMANDED for further proceedings consistent with this opinion.
JOANOS arid BARFIELD, JJ., concur.